## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**ZETRICK GREER # 195814**                                                           **PLAINTIFF**

**VERSUS**                                                  **CIVIL ACTION NO. 1:15cv80-RHW**

**CHASE RICHARDSON**                                                                 **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Before the Court is [31] Defendant Chase Richardson's June 3, 2016 motion for summary judgment in this 42 U.S.C. § 1983 prisoner civil rights lawsuit filed March 13, 2015 by the *pro se* plaintiff Zetrick Greer. Although Greer has filed no response, the Court addresses the matter on the merits since the motion is dispositive. The parties consented to the exercise of jurisdiction by the United States Magistrate Judge under 28 U.S.C. § 636(c) and FED.R.CIV.P. 73, and by order entered January 22, 2016, the case was reassigned to the undersigned for all further proceedings. [24], [26]

### Facts and Procedural History

Zetrick Greer, inmate number 195814, is serving two sentences totaling eight years in custody of the Mississippi Department of Corrections (MDOC) for convictions of conspiracy to commit a crime and possession of stolen property, both from Pearl River County, Mississippi.[1] Greer entered the MDOC system April 7, 2015 and his tentative release date is October 15, 2020. He filed this lawsuit while he was incarcerated at Lenoir Rowell Correctional Facility in Picayune, Mississippi.

---

[1] Greer testified his convictions are unrelated to the incident from which his lawsuit arises; that the conspiracy conviction was for a crime which predated the May 9, 2013 incident, and the possession of stolen property (a shotgun) happened after the incident. [31-1, p. 8]

Between 11:00 p.m. and midnight on May 9, 2013 Greer was getting gas for his car at the Chevron station on Memorial Boulevard in Picayune, Mississippi, and "having a verbal argument... with an old friend," Brandon Kennard, who was in a vehicle in front of Greer's at the gas pumps.[2] Greer had two passengers in his car, Marquis Spanks in the front passenger seat and Joshua Hart in the back. Greer stated he and Kennard were yelling at each other for a few minutes, being loud, and "somehow the police got called." Greer testified Picayune Police Officer Richardson pulled up at the Exxon gas station near the Chevron station, and that Richardson and another officer ran over to the Chevron station. Greer alleges Richardson had his gun out. When the officers were 20-30 yards away, Greer got in his car and "bugged out." Because he was right behind Kennard's vehicle, he first backed up, then as he drove away, Richardson fired shots at Greer's car and Spanks stated he was hit. Greer soon discovered he had gunshot wounds in both arms, and two or three blocks away from the scene, he crashed his car into a light pole. Greer jumped out of the car and fled.

Greer testified he knew Officer Richardson was after Hart, because Hart had run from Richardson earlier that night and Richardson had crashed his car into a ditch chasing Hart. Greer thinks that is why shots were fired. Greer had a friend take him to the hospital. [31-1, pp. 9-17], [34]  Greer was released from the hospital the next day, May 10, 2013, and turned himself in to police on May 13, 2013. [31-1, p. 18], [31-10]

Officer Richardson's affidavit states he had taken some food to Lt. Mike Petree who was fueling his police car at the Exxon station on Memorial Boulevard. While he was there,

---

[2]Kennard and his girlfriend Emily Jackson were at the station to meet Jackson's mother to pick up their two young children. Using her mother's cell phone, Jackson made calls to 911 reporting that men were trying to jump her boyfriend at the Chevron station, that there were babies in her car, and the men were threatening and talking about guns. [31-5], [31-6]

Richardson heard a police radio call advising of a fight in progress, a "10-32" which means "man with a gun," and a dispatch to the Chevron station which was only "a few hundred yards away from" the Exxon station. Richardson ran to the Chevron station in response to the call. Approaching the Chevron station, Richardson recognized Kennard and Emily Jackson. Kennard was sitting in a silver truck and did not appear to be armed, and Jackson was talking on a cell phone. Richardson also identified Marquise Spanks standing next to the front passenger door of the car later identified as the one Greer was driving, which was parked behind Kennard's truck. Richardson knew from his employment as a police officer that Spanks regularly carried weapons, and suspected Spanks was the person with a gun. Richardson ordered Spanks to step away from the car and not move. Instead, Spanks got into the car, and Greer got into the driver's seat and started the engine. Despite Richardson's orders to stop, Greer backed the car up and turned the wheel toward South Blanks Avenue. Moving toward the edge of the Chevron parking lot where it meets South Blanks Avenue, Richardson continued ordering the driver to stop, and Greer continued driving toward South Blanks. Standing in the path the car would have to take to drive onto South Blanks, Richardson raised his gun and warned he would fire if the driver did not stop. When he saw Greer shift the car into drive and grip the steering wheel, and heard the car's engine revving and its tires squealing on the pavement, Richardson fired toward the driver's side of the car windshield, moved out of the car's path, and continued firing as the car swerved past him onto South Blanks Avenue. Richardson returned to his patrol car to pursue, and soon found Greer's car crashed into a telephone pole a short distance away. [31-7]

      Glenn Agnelly, who was a Picayune police officer at the time, and is now a Pearl River County Deputy Sheriff, stated by affidavit that on May 9, 2013, he was on patrol with Lt. Mike Petree when they stopped for fuel at the Exxon station on Memorial Boulevard. He heard the

radio transmission regarding the altercation at the Chevron station and followed Richardson on foot to the Chevron station.  Agnelly heard Richardson order Spanks not to move, and he (Agnelly) also began shouting orders at Spanks and Greer to stop; Greer just shook his head "no."  Agnelly was standing to the passenger side of the car after it backed up, and his affidavit confirms that Richardson was between the car and South Blanks Avenue, "generally in the direction the car would go if the driver were trying to drive from the Chevron parking lot onto South Blanks Avenue."  As the car completed backing, Agnelly also saw the driver grip the steering wheel, and heard the revving engine and squealing tires, and Agnelly states that is when Richardson fired and moved out of the car's path as he continued to fire as the car passed him.  The car turned north on South Blanks Avenue.  [31-9]

In addition to the affidavits in support of his motion for summary judgment, Richardson has also presented the transcript of the screening hearing in this case [31-1]; photographs [31-11] and [31-8]; a narrative and 26-page report made by the Mississippi Highway Patrol Bureau of Investigation regarding its investigation of this incident and Greer's car [31-4] and [31-12]; a transcript and/or audio of the 911 calls [31-5], [31-6] and [36]; disks containing photographs and video from the Chevron station camera [31-3]and [36]; medical records regarding Greer's injuries [31-13], [31-14] and [34]; and Picayune police reports from other officers involved in the investigation of the incident the night it occurred.  [31-2]

Greer originally filed suit against "Picayune Police Department and/or Chase Richardson."  [1]  By Order entered June 11, 2015, the Court informed Greer that a police department is not a separate legal entity which may be sued, but is instead an extension of the city, and required Greer to state whether he was suing the City of Picayune (City), and if so, to state how the City violated his constitutional rights.  [7]  Greer responded on June 25, 2015, that

he was suing the City, because the City "violated [his] constitutional rights by hiring a police officer that shoots people for no reason..." [8]  On July 31, 2015, the Court added the City as a defendant. [9]  On August 4, 2015, the Court dismissed with prejudice Greer's claim against Picayune Police Department as it is not an entity amenable to suit. [10]

The Court dismissed without prejudice Greer's § 1983 claim against the City due to Greer's failure to allege any of the facts essential to a claim of municipal liability under § 1983.[3] And the Court dismissed Greer's state law claims against the City because the City is immune from vicarious liability under the Mississippi Tort Claims Act and because Greer failed to plead any facts to state a claim of negligent hiring. [10]  Richardson, the only remaining Defendant in the case, seeks summary judgment, asserting the force he used was objectively reasonable under the circumstances existing when he fired his gun at Greer's car, and that he is entitled to qualified immunity.

## Summary Judgment Standard

Rule 56, FED.R.CIV.P., requires that a motion for summary judgment be granted "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  A material fact is one that might affect the outcome of the suit under the governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[3]Governmental entities such as the City are "responsible only for [their] own illegal acts" but are "not vicariously liable under § 1983 for their employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 60, 131 S.Ct. 1350, 1359 (2011)(citations omitted).  The City is not liable under § 1983 based on supervisory liability or *respondeat superior*.  *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"); *Baker v. Putnal*, 75 F.3d 190, 199-200 (5th Cir. 1996) ("Municipalities are not vicariously liable for the actions of their employees under § 1983.  Municipal liability inures only when the execution of a local government's policy or custom causes the injury."); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

242, 248 (1986).  On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorable to the non-moving party. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005).

The party who bears the burden of proof at trial also bears the burden of proof at the summary judgment stage.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  One seeking summary judgment must identify those portions of the pleadings and discovery on file and any affidavits which he believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 325.  If the movant fails to show the absence of a genuine issue concerning any material fact, summary judgment must be denied, even if the non-movant has not responded to the motion. *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985).  However, once the movant carries its burden, the burden shifts to the non-movant to show summary judgment is inappropriate.  The non-movant may not rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which show a genuine issue as to a material fact exists.  *Celotex*, 477 U.S. at 324-325; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response."); *Foulston Siefkin LLP v. Wells Fargo Bank of Texas N.A.*, 465 F.3d 211, 214 (5th Cir. 2006) (Plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial"); *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 81 (5th Cir. 2000) (holding the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts").  Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence, will not suffice to create a real controversy

regarding material facts. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Discussion

Greer claims Richardson used excessive force during their encounter on May 9, 2013. Excessive force claims are governed by an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Analysis of whether use of force is excessive is fact-intensive and highly dependent on the individual circumstances of each case. *Brousseau v. Haugen*, 543 U.S. 194, 201 (2004). When an officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S., 1, 11 (1985).

The facts in this case, construed in the light most favorable to Greer, establish that Greer was at the Chevron station behind Kennard, admittedly arguing loudly with Kennard to the point that Jackson and her mother became sufficiently alarmed to called 911. Greer knew Officer Richardson and saw him arrive at the nearby Exxon station. Greer saw the officers running toward the Chevron station. Greer knew that Hart, his back seat passenger, had a run-in with Richardson earlier in the night, and assumed Richardson was after Hart. When the officers were 20 or 30 yards away, Greer got in his car and "bugged out," crashing into a light pole almost immediately after getting past Richardson and onto South Blanks Avenue. Greer then fled on foot. In addition to these facts, the 911 calls are indisputable; there is no question that the police dispatcher broadcast the call for police to respond to the Chevron station for a fight in progress and a man with a gun, and that Officer Richardson recognized Greer's front seat passenger as

someone known to carry weapons; and Greer has not contested that he ignored the orders of Officers Richardson and Agnelly to stop.  Furthermore, the photographic, forensic and video evidence offered in support of Richardson's motion shows Richardson was at the front of the car when he fired, and belies Greer's claim that Richardson shot through the passenger window. Based upon the totality of the circumstances established by the evidence presented to the Court, and analyzing Richardson's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and considering that Greer's decision to "bug out" forced Richardson to make an immediate judgment as to the amount of force necessary in the situation, the Court concludes Officer Richardson is entitled to qualified immunity in this case.  See, *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020-2021 (2014).

Officers such as Richardson "are entitled to assert the defense of qualified immunity for all acts and omissions which occur in the course of their official duties." *Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).  The doctrine of qualified immunity strikes a balance between the need to hold public officials accountable for exercising power irresponsibly, and the need to shield from harassment, distraction and liability those officials who perform their duties reasonably.  Qualified immunity protects government officials from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Federal courts review qualified immunity claims under a two-step analysis, first considering "whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)); *McClendon v. City of*

*Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002). When the allegations fail to establish that the officer violated a constitutional right, the officer is entitled to qualified immunity; if the allegations could make out a constitutional violation, the Court must determine whether the right was clearly established, *i.e.*, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Price*, 256 F.3d at 369. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to immunity." *Id.*, (citing *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992)). At best, Greer has shown he "bugged out" because he thought Officer Richardson was after his passenger Hart. It was Greer's action which forced Richardson to make an immediate judgment as to how to contain a situation he reasonably believed involved a man with a gun, and a driver committed to getting away from police.

Upon Richardson's plea of qualified immunity, the burden was on Greer to "rebut the ... defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Estate of Davis v. City of North Richland* Hills, 406 F.3d 375, 380 (5th Cir. 2005); *Salas*, 980 F.2d at 306. Greer bore "the burden of pleading a *prima facie* case, ... alleging 'detailed facts supporting the contention that the plea of immunity cannot be sustained.'" *Lynch v. Cannatella*, 810 F.2d 1363, 1376 (5th Cir. 1987), quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 245 (5th Cir. 1985). The Court finds Greer has failed to carry his burden. It is therefore,

**ORDERED AND ADJUDGED**, that [31] Defendant's motion for summary judgment is granted.  A separate judgment will be entered.

SO ORDERED, this the 7th day of March, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE